ALFONSO MURIENTE, demandante y apelante, *v.* ANGEL MARÍA YUMET MÉNDEZ y su esposa TOMASA CHACÓN, demandados y apelados.

Núm. 8252.—*Sometido:* Mayo 1, 1941. *Resuelto:* Mayo 7, 1941.

*Isaías M. Crespo,* abogado del apelante; *García Méndez & García Méndez,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Este pleito se originó en la Corte de Distrito de Arecibo y a moción de los demandados fué trasladado a la de Agua-

dilla. Alegó el demandante que Emiliano Rodríguez Suazo y su esposa constituyeron hipoteca a favor de los esposos demandados en garantía de un préstamo por $2,600, distribuyéndose la responsabilidad hipotecaria entre varias fincas de los deudores. Que posteriormente la suma adeudada quedó reducida a $1,000, garantizando una de las fincas hipotecadas, que se describen en la demanda, y que fué luego vendida al ahora demandante, la cantidad de $350 de principal, sus intereses a razón de 1 por ciento mensual, y una parte proporcional del crédito adicional para costas y honorarios de abogado. Que estando vencida la hipoteca, el demandante, por conducto de su abogado, Sr. Isaías Crespo, escribió al demandado notificándole su propósito de pagarle la suma garantizada por su finca, contestando por escrito el Sr. Yumet que no recibiría el pago de dicha suma si no se le satisfacía la cantidad total de $1,000 garantizada por la finca del demandante y por las que retenía Emiliano Rodríguez Suazo. Que nuevamente se dirigió el demandante al demandado, notificándole que su abogado le llevaría a su residencia en Aguadilla la suma de $357, o sea $350 de principal, $3.50 de una mensualidad vencida y los $3.50 restantes correspondientes a una mensualidad adelantada, y que a la vez le llevaría un proyecto de escritura de cancelación de la referida hipoteca por $350, para ser firmado por los demandados al recibir dicha cantidad. Que el mismo día le contestó el demandado diciéndole que él no tenía negocio alguno con el demandante, rehusando así la oferta de pago que se le hacía. Que en vista de la actitud asumida por los demandados y deseando el demandante liberar su finca del indicado gravamen, acompañaba a la demanda la cantidad de $350 de capital, más $3.50 de intereses vencidos, sumas que constituían el montante de la deuda garantizada por la finca de referencia. Terminó la demanda con súplica de que se recibiese dicha cantidad de $353.50 que así ponía el demandante a disposición de los demandados y se condenase a éstos a otorgar la correspondiente escritura de cancelación de hipo-

teca sobre la finca del demandante, con apercibimiento de que de no otorgarla, la otorgaría el márshal, debiendo además condenarse a los demandados al pago de las costas y a la cantidad de $100 por concepto de honorarios de abogado.

Contestaron los demandados admitiendo sustancialmente los hechos esenciales de la demanda antes reseñados; pero alegaron como materia de defensa que el demandante no había contratado con el demandado ni había éste autorizado el pago, ni se había obligado a recibir cantidad alguna que no fuese la totalidad de la deuda, ascendente a $1,000, y que dicha suma de $1,000 estaba vencida y era líquida y exigible, suma que aceptarían los demandados juntamente con los gastos y honorarios de abogado con motivo de este pleito, que estimaron en la cantidad de $300. Reprodujeron los demandados las excepciones previas de insuficiencia de hechos determinantes de causa de acción y la de falta de jurisdicción por razón de la cuantía, por tratarse, según ellos, de la consignación de una cantidad menor de $500. Terminó la contestación con súplica de que se declare sin lugar la demanda, con costas y gastos al demandante, y se le condene además al pago de $300 por concepto de honorarios de abogado.

Celebrado el juicio y recibida la evidencia de una y otra parte, que consistió principalmente en las escrituras de constitución de hipoteca y cheques en pago de los intereses, fué desestimada la demanda con costas al demandante, condenándolo además al pago de $150 por concepto de honorarios de abogado.

Veamos los fundamentos que tuvo la corte inferior para dictar esa sentencia. En la "Relación de Hechos y Opinión", los expone así el juez sentenciador:

"De la evidencia ofrecida por las partes en el acto del juicio resulta probado a entera satisfacción del tribunal que los demandados no han realizado contrato alguno con el demandante, ni han convenido ni autorizado el pago, ni se han obligado a recibir suma alguna de la deuda pendiente de $1,000, que no sea dicha totalidad de $1,000;

que el contrato original entre Yumet y Rodríguez Suazo a que se refiere la escritura número 102 no fué variado nunca, que Yumet no aceptaba nunca pago de intereses mensuales, si tales pagos no constituían la totalidad de los intereses de la deuda, los que se le enviaron en muchas ocasiones en dos *checks* uno de $6.50 y otro de $3.50, bajo un mismo sobre, resultando claro de la evidencia apor· tada que cuando esto no se hacía, Yumet devolvía los intereses que le eran remitidos, resultando además de la evidencia ofrecida que estos hechos le constaban a Muriente.

"El artículo 1123 del Código Civil de 1930, que corresponde con el 1137 del Código de 1902, expresamente dispone que no podrá compelerse al acreedor a recibir las prestaciones en que consiste la obligación, a menos que el contrato expresamente lo autorice. Hemos examinado las escrituras ofrecidas en evidencia, y ellas no autorizan tal cosa. A mayor abundamiento, no ha habido convenio posterior que modifique tales escrituras, según resulta de la evidencia aportada.

"Independientemente de los hechos expuestos anteriormente, resulta también claro para el tribunal que no se trata de una acción real, sino de una acción en que los demandados se niegan a recibir una cantidad de dinero que quiere pagar el demandante, y que dichos demandados objetan porque debe venir acompañada de la totalidad de la deuda o prestación original. Se discute la forma o cuantía del pago; se trata claramente de una acción de consignación, que es personal. *González* v. *Lebrón et al.,* 24 D.P.R. 399. El propósito principal de este pleito es por tanto la consignación. La cuantía envuelta es de $350. Siendo ello así, no tendría jurisdicción esta corte. *The Juncos Central Co.* v. *Toro,* 30 D.P.R. 330.

"Estimamos, por todo cuanto hemos expuesto anteriormente, que los demandados no están obligados a recibir la cantidad de $350 que ofrece el demandante y por la evidencia ofrecida está el tribunal además plenamente satisfecho de que se trata de una acción personal, en la cual la cuantía envuelta es menor de $500. Un examen cuidadoso por el demandante de todos estos hechos le hubiera demostrado fácilmente que la acción no debía prosperar. Es por tanto indudable que ha actuado con temeridad. Habida cuenta de todas estas circunstancias, y considerando todos los factores que deben pesarse en la fijación de honorarios, tales como la capacidad de los abogados, el éxito alcanzado y cuanto se ha sostenido en los casos de *Bertrán et al.* v. *Carrasquillo,* 29 D.P.R. 559, y *Canals* v. *Vidal,*

resuelto por el Honorable Tribunal Supremo con fecha 3 de abril de 1940 (56 D.P.R. 457), la corte declara sin lugar la demanda y condena al demandante a pagar a los demandados la cantidad de $150 por honorarios de abogado, más las costas.''

Si bien la acción fué denominada ''Consignación de Dinero'', del contexto de la misma, como puede verse, resulta que la acción establecida es virtualmente la plenaria sobre otorgamiento de escritura de cancelación y no el procedimiento de jurisdicción voluntaria prescrito en los artículos 1130 al 1135 del Código Civil, ed. 1930, bajo el epígrafe ''Del ofrecimiento de pago y la consignación.'' El fin o propósito de la acción en este caso establecida no es simplemente consignar la cantidad adeudada y así verificar el pago de la obligación. La consignación o depósito de la cantidad a disposición de los demandados no es más que el medio para poder lograr el fin, que es la cancelación del gravamen hipotecario. No se trata, pues, como sostiene la corte sentenciadora y los apelados, de una mera acción personal cuya cuantía es menor de $500. Se trata de una acción para cancelar el derecho real de hipoteca que poseen los demandados sobre un inmueble del demandante. En tales circunstancias, sea cual fuere el valor pecuniario de ese derecho, corresponde a la corte de distrito y no a la municipal conocer de la acción.

En el caso de *Marrero* v. *Registrador de Mayagüez,* 32 D.P.R. 891, se resolvió esta misma cuestión. Sobre cierta finca rústica del término municipal de Mayagüez se había constituído una hipoteca para garantizar la suma de $244. Se inició un pleito solicitando la cancelación del gravamen, interponiéndose la demanda en la corte municipal. Ordenada la cancelación del gravamen, se expidió mandamiento dirigido al registrador para que la verificara, negándose éste a practicarla, entre otros motivos porque la corte municipal había actuado sin jurisdicción por razón de la materia. Al resolver el recurso interpuesto contra la nota del registrador, dijo esta corte:

"La cuestión fundamental envuelta en este recurso es la de si una corte municipal tiene jurisdicción para ordenar la cancelación de una hipoteca.

" *       *       *       *       *       *       *

"Si se atiende únicamente a la cuantía envuelta en el litigio, sería necesario decidir la cuestión a favor del recurrente, pues dicha cuantía es menor de quinientos dólares. Pero si se toma en consideración la materia objeto del pleito, la nota recurrida se sostiene.

"Las cortes municipales lo son de jurisdicción limitada. No son cortes de récord. La jurisdicción general para conocer de los asuntos civiles en primera instancia, salvo las excepciones fijadas por la ley, corresponde a los tribunales de distrito.

" *       *       *       *       *       *       *

"Ahondando más en el estudio de la legislación antigua y la vigente, esta misma corte, en el caso de *Valdivieso* v. *Rivera,* 19 D.P.R. 702, decidió que la cuantía de quinientos dólares fijada por la ley de marzo 10, 1904, que reorganizó el sistema judicial de la Isla, determina la jurisdicción de las cortes municipales para conocer de los asuntos civiles ordinarios, pero no de los regulados por leyes especiales.

" *       *       *       *       *       *       *

"La cancelación de hipotecas se, regula por la Ley Hipotecaria y su reglamento y aunque el caso es distinto del de los tres que hemos citado (pleitos de nulidad de procedimiento hipotecario), los razonamientos que llevaron al tribunal a decidir en dichos tres casos que la jurisdicción exclusiva correspondía a las cortes de distrito, son aplicables." (Paréntesis nuestro.)

La que acabamos de citar no es la única decisión de este tribunal que sostiene esa doctrina. Véanse al mismo efecto *Colón Caballero* v. *Registrador,* 38 D.P.R. 653; *Perocier* v. *Registrador,* 47 D.P.R. 165, 169; y *Nazario* v. *Muñiz,* 54 D.P.R. 51, 54.

Establecida la jurisdicción de la corte de distrito para conocer de este asunto por razón de la materia, réstanos resolver si, contrario a lo que sostienen los apelados y la corte sentenciadora, el apelante tenía derecho, una vez vencida la hipoteca, como en este caso lo estaba, a exigir la cancelación del gravamen hipotecario que afectaba su finca,

previo pago de la suma por ella garantizada, sin necesidad de satisfacer el resto del préstamo garantizado por otras fincas.

El artículo 124 de la Ley Hipotecaria, que terminantemente resuelve la cuestión, dice así:

"Artículo 124. Dividida la hipoteca constituída para la seguridad de un crédito entre varias fincas y pagada la parte del mismo crédito con que estuviere gravada alguna de ellas, se podrá exigir, por aquél a quien interese, la cancelación parcial de la hipoteca en cuanto a la misma finca. Si la parte de crédito pagada se pudiere aplicar a la liberación de una o de otra de las fincas gravadas, por no ser inferior al importe de la responsabilidad especial de cada una, el deudor elegirá la que haya de quedar libre."

Comentando idéntico precepto de la Ley Hipotecaria de España, dicen los Sres. Galindo y Escosura:

"Ya hemos dicho que por la división se fracciona la hipoteca y se forman tantas con vida propia e independiente, cuantas son las fincas; por lo tanto, si se paga toda la cantidad de que responde una, respecto a ésta la cancelación que se haga no es parcial, *sino total, porque ya no garantiza el resto del crédito sobre otras fincas.* (V. Res. de 8 de octubre, 1886, y 12 de julio, 1899.)" 3 Galindo y Escosura, "Legislación Hipotecaria", 4a. ed., 269. (Bastardillas nuestras.)

En la Exposición de Motivos de la Ley Hipotecaria de 1861 (1 Galindo y Escosura, "Legislación Hipotecaria", 4ª. ed., pág. 128), la Comisión de Códigos, refiriéndose a esta materia, dice lo siguiente:

"Más sucederá a veces, cuando se haya distribuído un crédito hipotecario entre diferentes fincas, que la parte del crédito satisfecho pueda aplicarse a la liberación de una u otra de las gravadas, por no ser inferior al importe de la responsabilidad especial de cada una: en este caso la Comisión no ha dudado que la elección debe corresponder al deudor, ya porque es regla general que su condición es la favorecida por el derecho, ya porque a él corresponde decir, al hacer el pago, a qué finca quiere libertar de la carga hipotecaria."

La misma cuestión fué resuelta por este tribunal hace treinta y nueve años, en el caso de *Frontera* v. *Registrador,* 2 S.P.R. 709.

El hecho de que los intereses de la hipoteca sobre esta finca fuesen remitidos desde Arecibo a los demandados en un cheque bajo el mismo sobre en que se enviaban los correspondientes al resto del crédito y que el demandado devolviese al demandante el cheque de intereses cuando no venía junto con el otro, a lo cual parece dar tanta importancia el juez sentenciador, es completamente inmaterial, pues esa mera condescendencia o tolerancia del demandante no le priva del derecho que le reconoce la ley a exigir la cancelación del gravamen hipotecario que afecta su finca pagando a su vencimiento el montante del mismo.

La exposición que hemos hecho de las alegaciones y del Derecho aplicable al caso resuelve adversamente a los demandados sus excepciones previas antes indicadas. Parafraseando ahora a la corte inferior, debemos decir que un mero examen por los demandados de la ley aplicable al caso les hubiera demostrado fácilmente la razón que asistía al demandante, y que por lo tanto han actuado con temeridad al oponerse a sus justas pretensiones.

*Procede revocar la sentencia apelada, y en su lugar dictar la que debió haber dictado la corte inferior, a saber: declarar con lugar la demanda y condenar a los demandados a que en el término de cinco días contados a partir de la fecha en que se reciba el mandato en la corte inferior, otorguen escritura de cancelación total de la hipoteca de $350 de principal que afecta la finca descrita en la demanda, siendo de cuenta del apelante todos los gastos de dicha escritura, así como los de su inscripción en el Registro de la Propiedad, apercibiéndose a los demandados apelados que de no otorgar dicha escritura dentro del plazo indicado, procederá el márshal a otorgarla, quedando a disposición de los demandados la suma depositada a su favor por el demandante; e imponer*

*a los demandados las costas de este pleito y condenarles además al pago de $100 por concepto de honorarios del abogado del demandante por sus servicios prestados en la corte inferior.*